IN THE UNITED STATES DISTRICT COURT,
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Alexander Saavedra, individually        :
           :
Plaintiff,                         :
           :
    Vs.                         :     Docket No. **5:24-cv-2675**
           :
Lehigh Carbon Community College,    :
           :
Defendants.                    :
           :
           :
           :
           :

---

## VERIFIED COMPLAINT

Plaintiff by and through his undersigned attorneys, brings this Complaint against the above-named Defendants, agents, and successors in office, to safeguard his rights under the United States Constitution, State and Federal law, and in support thereof alleges the following:

## PRELIMINARY STATEMENT

1. Plaintiff, Mr. Alexander Saavedra, is a twenty-seven-year-old, adult individual and student who previously attended Lehigh Carbon Community College (the "Defendant" or the "College").

2. Mr. Saavedra is diagnosed, *inter alia*, with Autism; chemotherapy-induced peripheral neuropathy; a history of B-cell acute lymphoblastic leukemia with multiple relapses; a history of stem cell transplant; and poor immune reconstruction due to ongoing, weekly

immunotherapies. He additionally has Specific Learning Disabilities in reading, writing, and mathematics.

3.   At all times while attending the College, Mr. Saavedra had a Section 504 disability accommodation plan, which the College agreed to implement.

4.   During the summer semester 2022, the College failed to work with Mr. Saavedra to implement and develop the Section 504 accommodations. As a result, he did not have the accommodations in place throughout the entire summer semester calculus course, including his midterm examination in July, 2022.

5.   A scribe was one of the accommodations recommended for Mr. Saavedra after he received a recommendation from his neuropsychologist in August, 2022. Mr. Saavedra requires this accommodation because he fatigues easily while writing, due to his history of leukemia. The College did not work with Mr. Saavedra to implement this accommodation.

6.   In July 2022, Mr. Saavedra took the midterm for the summer semester calculus course.

7.   The midterm examination was proctored from home on a camera recording.

8.   At several points during the examination, Mr. Saavedra became fatigued, and at the end of the examination, he had to ask his mother to act as the scribe to transfer the scratch work. The students were required to show their work and to submit it to the professor. Because Mr. Saavedra became fatigued, he had no choice but to ask his mother to scribe for him so that he could turn in his work for the examination.

9.   Despite the fact that Mr. Saavedra relied on his mother as a reasonable, unofficial accommodation, the College accused him of academic dishonesty. Mr. Saavedra maintains that he did not commit any act of academic dishonesty.

10. While Mr. Saavedra acknowledged that the scribe was not one of the accommodations he had at the time of the examination in July, 2022, he only relied on his mother's assistance with writing, due to the fatigue caused by his medical issues and disabilities.

11. A scribe was one of the accommodations recommended for Mr. Saavedra after his diagnosis of Autism was established in August, 2022. Mr. Saavedra required this accommodation because he fatigued easily while writing, due to his history of leukemia.

12. After the College made this allegation, Mr. Saavedra retained a lawyer/advocate to assist him with navigating the student discipline process and to help ensure that the College provided him with accommodations.

13. Upon information and belief, the College retaliated against Mr. Saavedra for retaining the advocate/lawyer by threatening him, "most of the cases like yours ending in a hearing will finish with bad outcomes, and there is no need to go through the whole process." Mr. Saavedra understood this statement, in response to his use of a lawyer, as a directive to forgo the hearing process, since the outcome was predetermined.  As a person with Autism, he is especially prone to be manipulated by people in positions of authority and he is vulnerable to coercion.

14. The College's threat chilled Mr. Saavedra's ability to participate in the appeal process. In fact, he was so frightened by the threat, that he did not participate in the hearing. In other words, the threat caused him to forgo the hearing altogether.

15. As a result of the threat, the College never convened the hearing.

16. The academic dishonesty charges are now on Mr. Saavedra's record. These charges are impairing his ability to apply to other colleges.

17. Moreover, the College's refusal to accommodate Mr. Saavedra and to convene a hearing are the direct and proximate causes of his harm and damages.

## JURISDICTION AND VENUE

18. This court has jurisdiction under 28 U.S.C. §1331, as the causes of action contained herein invoke federal question jurisdiction, as Plaintiff brings claims arising under federal law.

19. This court has supplemental jurisdiction over Mr. Saavedra's state claims pursuant to 28 U.S.C. § 1367.

20. Venue for this action properly lies in this Judicial District pursuant to 28 U.S.C. §1391(b) because the events that give rise to the claims in this action occurred in this District.

## PARTIES

**Plaintiff:**

21. Plaintiff Alexander Saavedra is an adult individual, residing at 3219 West Washington Street, Allentown, Pennsylvania 18104.

**Defendant:**

22. Defendant Lehigh Carbon Community College, is a public community college organized under the laws of the Commonwealth of Pennsylvania. Its principal place of business is located at 4525 Education Park Drive, Schnecksville, Pennsylvania 18104.

## FACTUAL ALLEGATIONS

23. Mr. Saavedra was previously a student in attendance at the College, where he was a sophomore and a pre-med major. Again, he is diagnosed, *inter alia*, with Autism, neuropathy, and a history of leukemia.

24. To overcome these disabilities, Mr. Saavedra has collaborated with the College to develop a Section 504 accommodation plan. (*See* Exhibit "A."). The disability accommodations, in no way, interfere with the quality of the College's educational programming. In fact, Mr. Saavedra collaborated with the College to develop a set of agreed-upon accommodations.

25. The Section 504 plan calls for Mr. Saavedra to have accommodations, which includes, *inter alia*, fifty-percent additional time on tests and a distraction-free environment.

26. Again, Mr. Saavedra worked with the College to develop the accommodations. The College consented to the Section 504 plan.

27. Starting around May 2022, the College refused to work with Mr. Saavedra to develop and implement the Section 504 accommodations.

28. At the beginning of the summer session 2022, Mr. Saavedra renewed his request for accommodations through the College's Disability Services Office. Part of the requested accommodations included extra time on examinations and assignments. When Mr. Saavedra requested the Section 504 plan, the College refused to work with him to develop it.

29. Shortly thereafter, Mr. Saavedra underwent a neuropsychological evaluation at the direction of his doctor. Mr. Saavedra timely shared this evaluation report with the College.[1] The neuropsychological evaluation included a recommendation for a scribe as an accommodation.

---

[1] The neuropsychological evaluation found that Mr. Saavedra had a diagnosis of Autism. The College previously provided Section 504 accommodations to him for his specific learning disabilities in mathematics, reading, and writing, along with his history of cancer treatment. Upon receiving the Autism diagnosis in August 2022, Mr. Saavedra promptly notified the College.

30. During the time that elapsed between the College's request and the evaluation, during the summer session, the College stopped implementing the Section 504 accommodations. This meant that Mr. Saavedra had to take a condensed, summer-session calculus class[2], without his accommodations.

31. Just prior to the professor administering the first midterm examination for the class, Mr. Saavedra approached his professor to discuss the fact that he was worried that he was not grasping the course material and would not pass the class, because he did not have the accommodations in place when the class started.

32. He also expressed that he wanted to withdraw from the class because he was struggling. The professor, however, instructed him to remain in the class and to take the examination, even though he did not have the accommodations in place.

33. Though Mr. Saavedra asked about how to withdraw from the class, the professor never told him how to do so. Instead, she pressured him to take the examination without his Section 504 accommodations.

34. Again, Mr. Saavedra is a student with Autism. Upon information and belief, the professor was aware that he has disabilities, including several Specific Learning Disabilities, based on the fact that Mr. Saavedra showed her his spring 2022 accommodations. Despite having this knowledge, she pressured him to take the examination without his Section 504 accommodations.

35. The professor represented to Mr. Saavedra that she would contact Disability and Educational Support Services about his accommodations. Upon information and

---

[2] Prior to taking the summer calculus class, Mr. Saavedra had never before taken a calculus or precalculus class. Since the allegations raised by the College, he has taken calculus at another college and received a passing grade.

belief, she never reached out to Disability and Educational Support Services to see how she could accommodate him.

36. Because of his Autism, Mr. Saavedra is prone to be manipulated by other people in positions of authority. As such, it is easy for people in a position of authority, such as a professor, to pressure him into doing things that he would not otherwise have done. He notes that he becomes easily overwhelmed and confused in such a situation. This is exactly what happened. The professor strong-armed Mr. Saavedra into taking the examination without the proper accommodations in place.

37. The professor coerced Mr. Saavedra to take the midterm without his Section 504 accommodations, to his detriment.

38. Following some confusion around an examination, and after the College failed to accommodate his disabilities, the College alleged that Mr. Saavedra had cheated or committed an academic integrity violation on an examination in his summer calculus class.

39. While Mr. Saavedra denies the allegation that he cheated on the examination, he does concede that his mother acted as a scribe for him for the scratch work he had to submit after he completed his examination. Again, Mr. Saavedra was feeling fatigued due to his medical condition and disabilities. For this reason, his mother assisted with scribing his work.

40. Mr. Saavedra affirms that he had no choice but to have his mother scribe for him after the examination was completed for completing the scratchwork for the math. Without the scribing, he would not have been able to complete the examination.

41. It is notable that for much of the examination, Mr. Saavedra's health status was not optimal, which coincided with fatigue due to neuropathy in both of his hands and feet, along with chest pain. Despite the fatigue and neuropathy, he did his best to overcome these medical challenges, and took the examination. He only relied on his mother scribing for him when it became absolutely necessary.

42. The College's failure to accommodate the disability resulted in the College charging him with an academic integrity violation. In or around August 2022, the College made this allegation.

43. In September 2022, Mr. Saavedra immediately attempted to resolve the allegation through the appeal process, which included requesting a hearing. As a part of his appeal, Mr. Saavedra hired a lawyer to advocate on his behalf.

44. In response to Mr. Saavedra hiring a lawyer, College employee Dean Brian De Long threatened him, "most of the cases like yours ending in a hearing will finish with bad outcomes, and there is no need to go through the whole process."  As a person with Autism, he is especially prone to be manipulated by people in positions of authority and he is vulnerable to coercion.

45. The College's threat chilled Mr. Saavedra's ability to participate in the appeal process. In fact, he was so frightened by the threat, that he did not participate in the hearing. In other words, the threat caused him to forgo the hearing altogether.

46. Again, Mr. Saavedra is a person with Autism. When the College threatened him for attempting to appeal the finding, it caused him considerable anxiety and mental anguish. In other words, their threat denied him his right to procedural due process.

47. To that end, the College refused to convene a hearing.

48. Upon information and belief, by threatening Mr. Saavedra, the College found its escape hatch. It now had the pretextual justification to get out of convening the hearing. Here, the College could now claim that Mr. Saavedra consented to waive the hearing process. Nothing can be further from the truth. The College threatened and tricked Mr. Saavedra, which denied him his right to the hearing. Again, as a person with Autism, he is especially prone to be manipulated by people in positions of authority and he is vulnerable to coercion.

49. The College should not benefit from its sleight of hand, which, ultimately, denied a student with Autism their right to a fair hearing.

50. It should be additionally noted that the College never informed Mr. Saavedra, in writing or orally, what the consequences of forgoing a hearing would be. Again, Mr. Saavedra has Autism and specific learning disabilities. He needed to be able to give informed consent. Absent any explanation, the College only further excluded him from any process.

51. The College denied him due process through their coercive conduct.

52. Because the College refused to accommodate Mr. Saavedra for the summer 2022 term, it denied him access to his education. The College further denied Mr. Saavedra access to his program when it denied him a hearing. As a result, Mr. Saavedra faced adverse disciplinary consequences, which included failing the class and having academic dishonesty on his record.

53. The academic dishonesty charges are categorically false. Despite the falsity of this charge, the College continues to leave this notation in his file. This notation in his

file is preventing Mr. Saavedra from applying to other universities and it will

impair his ability to apply to medical school.

54. The College's conduct is both the direct and proximate cause of Mr. Saavedra's

damages.

55. Since approximately November 2022, Mr. Saavedra has been working to resolve

these issues with the College informally and outside of litigation. Despite his

efforts to reach a good-faith resolution, he has been unable to reach an agreement

with the College. After exhausting all efforts, he is now filing the instant

complaint.

56. This complaint followed.

### Count 1
**DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT--DENIED
THE BENEFITS OF EDUCATIONAL SERVICES BY REASON OF DISABILITY**
*Mr. Saavedra v. Lehigh Carbon Community College*

57. Mr. Saavedra hereby realleges all matters set forth in the preceding paragraphs of this

complaint and incorporates them herein.

58. The Americans with Disabilities Act ("ADA") prohibits discrimination against qualified

individuals with disabilities on the basis of their disability. 42 U.S.C. §§ 12161, 12132.

To establish a claim under the ADA, a plaintiff must demonstrate that: (1) he has a

disability, or was regarded as having a disability; (2) he was "otherwise qualified" to

participate in school activities; and (3) he was "denied the benefits of the program or was

otherwise subject to discrimination because of her disability." *A.G. v. Lower Merion Sch.

Dist.*, 542 F. App'x 193, 198 (3d Cir. 2013).

59. The Defendant College discriminated against, and denied Mr. Saavedra the benefits to his

program, under the Americans with Disabilities Act:

a. The Plaintiff is recognized as a person with disabilities, which, again, includes *inter alia*, Autism Spectrum Disorder, neuropathy, a history of leukemia, and specific learning disabilities.

b. The Defendant College is a federal funds recipient and is a place of public accommodation.

c. Mr. Saavedra is otherwise qualified to participate in the program at the College. He has demonstrated that he is otherwise qualified to participate in their program by virtue of the fact that the College has developed a Section 504 accommodation plan for him each semester.

d. The Defendant denied Mr. Saavedra the benefits of his program in several ways, as pleaded in ¶¶ 27-48.

e. The College further denied Mr. Saavedra the benefits of his program when it took steps to intimidate him, as a person with Autism, from participating in the hearing process, as pleaded in ¶¶ 43-50.

f. The Section 504 accommodations are reasonable and, in no way, fundamentally altered the nature and essence of the program.

g. Mr. Saavedra requires these accommodations to access the benefits of his education and program.

h. The Defendant's deliberate indifference to implementing his accommodations, together with their intentional discrimination, which included denying him the hearing process, interfered with Mr. Saavedra's ability to fully participate and benefit from his program.

60. As a direct and proximate result of Defendant's deliberate indifference and intentional discrimination, the Defendant denied Mr. Saavedra the benefits of his program on the basis of his disability.

61. Wherefore, the Plaintiff prays for relief against the Defendant as hereinafter set forth in the prayer for relief.

<u>**Count 2**</u>
**DISCRIMINATION UNDER § 504 OF THE REHABILITATION ACT**
*Mr. Saavedra v. Lehigh Carbon Community College*

62. Mr. Saavedra hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

63. To establish a prima facie case under the §504 of the Rehabilitation Act ("RA")[3], a party must show: (a) they were a person with a disability; (b) they were otherwise qualified for participation in the program; (c.); the program they are challenging receives federal financial assistance; and (d.) they were subject to discrimination solely on the basis of their disability. *Hornstine v. Township of Moorestown,* 263 F. Supp. 2d 887, 905 (D.N.J 2003).

    a.  The Plaintiff is recognized as a person with disabilities, which, again, includes *inter alia*, Autism Spectrum Disorder, neuropathy, a history of leukemia, and several specific learning disabilities.

    b.  The Defendant College is a federal funds recipient and is a place of public accommodation.

    c.  Mr. Saavedra is otherwise qualified to participate in the program at the College. He has demonstrated that he is otherwise qualified to participate in their program

---

[3] *See* 29 U.S.C. § 794(a).

by virtue of the fact that the College has developed a Section 504 accommodation plan for him each semester.

d.  The Defendant denied Mr. Saavedra the benefits of his program in several ways, as pleaded  in ¶¶ 27-48.

e.  The College further denied Mr. Saavedra the benefits of his program when it took steps to intimidate him, as a person with Autism, from participating in the hearing process, as pleaded in ¶¶ 43-50.

f.  The Section 504 accommodations are reasonable and, in no way, fundamentally alter the nature and essence of the program.

g.  Mr. Saavedra requires these accommodations to access the benefits of his education and program.

h.  The Defendant's deliberate indifference to implementing his accommodations, together with their intentional discrimination, which included denying him the hearing process, interfered with Mr. Saavedra's ability to fully participate and benefit from his program.

64. As a direct and proximate result of Defendant's deliberate indifference and intentional discrimination, the Defendant denied Mr. Saavedra the benefits of his program on the basis of his disability.

65. Wherefore, the Plaintiff prays for relief against the Defendant as hereinafter set forth in the prayer for relief.

**<u>Count 3</u>**
**RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT**
***Mr. Saavedra v. Lehigh Carbon Community College***

66. Mr. Saavedra hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

67. The Americans with Disabilities Act protects individuals from retaliation for engaging in activities, seeking to press or vindicate rights provided by statute. §12203 of the ADA provides:

> No person shall discriminate against any individual because such individual **has opposed any act** or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. §12203(a).

68. Mr. Saavedra engaged in a protected and lawful activity when he retained an attorney and advocate to assist him with obtaining accommodations at the College and to ensure that the College implemented these accommodations.

69. Mr. Saavedra additionally engaged in a lawful activity when he retained the lawyer to assist him with navigating the hearing process. As a student with Autism and several other disabilities, it was important for Mr. Saavedra to have an attorney/advocate to help him to navigate the hearing process.

70. The Defendant retaliated against the Plaintiff after he engaged the services of the advocate and attorney during the fall 2022 semester.

71. The Defendant, through Dean De Long, responded to Mr. Saavedra's engagement of the lawyer/advocate by threatening him, "most of the cases like yours ending in a hearing will finish with bad outcomes, and there is no need to go through the whole process." As a person with Autism, he is especially prone to be manipulated by people in positions of authority and he is vulnerable to coercion.

72. Notably, the Dean pressured Mr. Saavedra to plead guilty and not to go through the hearing process.

73. The Defendant's conduct chilled Mr. Saavedra's ability to meaningfully participate in the hearing process. In fact, in direct response to the threat, Mr. Saavedra abandoned the hearing altogether.

74. The retaliatory conduct further denied Mr. Saavedra's access to his program and chilled his advocate/attorneys' ability to effectively advocate for him.

75. Upon information and belief, the College took adverse action in response to Mr. Saavedra hiring the advocate/attorney.

76. The Defendant's conduct is the direct and proximate cause of Mr. Saavedra's harm and damages.

77. Wherefore, the Plaintiff prays for relief against the Defendant as hereinafter set forth in the prayer for relief.

**<u>COUNT 4</u>**
**RETALIATION UNDER § 504 OF THE Rehabilitation Act**
***Mr. Saavedra v. Lehigh Carbon Community College***

78. Mr. Saavedra hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

79. The federal regulations under §504 provide:

No recipient [of federal funds] or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by the [Rehabilitation Act], or because he has made a complaint, testified, assisted, or participated in any manner, proceeding or hearing [.]

34 CFR §107(e).

80. Mr. Saavedra engaged in a protected and lawful activity when he retained an attorney and advocate to assist him with obtaining accommodations at the College and to ensure that the College implemented these accommodations.

81. Mr. Saavedra additionally engaged in a lawful activity when retained the lawyer to assist him with navigating the hearing process. As a student with Autism, it was important for Mr. Saavedra to have an attorney/advocate to help him to navigate the hearing process. As a person with Autism, he is especially prone to be manipulated by people in positions of authority and he is vulnerable to coercion.

82. The Defendant retaliated against the Plaintiff after he engaged the services of the advocate and attorney during the fall 2022 semester.

83. The Defendant, through Dean Brian De Long, responded to Mr. Saavedra's employment of the lawyer/advocate by threatening him, "most of the cases like yours ending in a hearing will finish with bad outcomes, and there is no need to go through the whole process." Again, as a person with Autism, he is especially prone to be manipulated by people in positions of authority and he is vulnerable to coercion.

84. The Defendant's conduct chilled Mr. Saavedra's ability to meaningfully participate in the hearing process. In fact, in direct response to the threat, Mr. Saavedra abandoned the hearing altogether.

85. The retaliatory conduct further denied Mr. Saavedra access to his program and chilled his advocate/attorneys' ability to effectively advocate for him.

86. Upon information and belief, the College took adverse action in response to him hiring the advocate/attorney.

87. The Defendant's conduct is the direct and proximate cause of Mr. Saavedra's harm and damages.

88. Wherefore, the Plaintiff prays for relief against the Defendant as hereinafter set forth in the prayer for relief.

<u>**COUNT 5**</u>
**DENIAL OF EQUAL PROTECTION--42 U.S.C. § 1983**
*Mr. Saavedra v. Lehigh Carbon Community College*

89. Mr. Saavedra hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

90. Plaintiff alleges that the Defendant College deprived him of his rights and privileges secured to him by the Fourteenth Amendment by denying him equal protection of law.

91.  The College is a federal funds recipient.

92. The Defendant abridged the Plaintiff's rights to equal protection under the law, per the Fourteenth Amendment, when it denied him equal access to the College and the benefits of his program on the basis of his disability status.

93. Upon information and belief, the College maintains a custom of engaging in the conduct as set forth in  ¶¶ 27-48 and ¶¶ 43-50.

94. Furthermore, upon information and belief, Dean Long was a final decision maker, who, ultimately, decided to exclude Mr. Saavedra from the hearing process.

95. Furthermore, Dean Long has the ability to address the failure to accommodate issues with the examination, together with the allegations of misconduct. Rather than taking steps to address the failure to accommodate or the alleged misconduct, he used his authority to deny Mr. Saavedra, a student with Autism and several learning disabilities, his hearing process.

96. In other words, he denied a student with disabilities to a process to which his non-disabled peers were entitled.

97. The Defendant intentionally discriminated against Mr. Saavedra and the Defendant has been deliberately indifferent to Mr. Saavedra's rights to attend school as a person with disabilities equal to that of his non-disabled peers.

98. The Defendant's conduct is the direct and proximate cause of the Plaintiff's harm.

99. Wherefore, the Plaintiff prays for relief against the Defendant as hereinafter set forth in the prayer for relief.

### COUNT 6
### DENIAL OF PROCEDURAL DUE PROCESS --42 U.S.C. § 1983
#### *Mr. Saavedra v. Lehigh Carbon Community College*

100. Mr. Saavedra hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

101. Colleges are required to offer students a hearing process for matters of student discipline. *Goss v. Lopez*, 419 U.S. 565 (1975). To that end, the College's handbook and policies expressly set forth the hearing process for matters of students' discipline and academic integrity.

102. The College is a federal funds recipient.

103. The College violated Mr. Saavedra's right to procedural due process when it refused to convene a hearing, as pleaded in ¶¶ 43-50.

104. It further violated his right to procedural due process when it took steps to deny him the hearing process. In fact, Dean De Long threatened Mr. Saavedra, "most of the cases like yours ending in a hearing will finish with bad outcomes, and there is no need to go through the whole process." As a person with Autism, he is especially prone to be manipulated by people in positions of authority and he is vulnerable to coercion.

105.    Again, Mr. Saavedra is a student with Autism. When staff threatened Mr. Saavedra, he began to panic. Mr. Saavedra affirms that the staff intimidated him into forgoing the hearing.

106.    As a direct and proximate result of Defendant's willful conduct and deliberate indifference, it violated his right to procedural due process and to attend school.

107.    The Defendant's deliberate refusal to comply with the procedural requirements resulted in Mr. Saavedra's damages.

108.    Wherefore, the Plaintiff prays for relief against the Defendant as hereinafter set forth in the prayer for relief.

<u>**COUNT 7**</u>
**FUNDAMENTAL FAIRNESS**
***Mr. Saavedra v. Lehigh Carbon Community College***

109.    Mr. Saavedra hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

110.    The College has set forth a code of conduct and a hearing process for academic integrity violations. The Code of Conduct, Handbook, and supporting policies and procedures require that it convene a hearing when it alleges that a student committed academic dishonesty. (*See* Annex "B.").

111.    The Code of Conduct requires that the College adhere to these procedures.

112.    The College has refused to comply with these procedures. Rather than convene the hearing, the College took steps to intimidate Mr. Saavedra, a student with Autism, from participating in the hearing. In fact, Dean De Long threatened Mr. Saavedra, "most of the cases like yours ending in a hearing will finish with bad outcomes, and there is no need to

go through the whole process." As a person with Autism, he is especially prone to be

manipulated by people in positions of authority and he is vulnerable to coercion.

113.    Again, Mr. Saavedra is a student with Autism. When staff threatened Mr. Saavedra,

he began to panic. Mr. Saavedra affirms that the staff intimated him into forgoing the

hearing.

114.    The College's threat chilled Mr. Saavedra's ability to have the hearing.

115.    Moreover, the College simply refused to convene a hearing for Mr. Saavedra.

116.    As a direct and proximate result, the College denying Mr. Saavedra fundamental fairness

and the hearing, it caused him harm and damages.

117.    Wherefore, the Plaintiff prays for relief against the Defendant as hereinafter set forth

in the prayer for relief.

## COUNT 8
## BREACH OF CONTRACT--SUBSTANTIAL DEVIATION
### *Mr. Saavedra v. Lehigh Carbon Community College*

118.    Mr. Saavedra hereby realleges all matters set forth in the preceding paragraphs of this

complaint and incorporates them herein.

119.    Plaintiff and the Defendant had formed a binding Contract for the Plaintiff to attend

the College. (*See* Exhibit "B" at 2.).

120.    Plaintiff and the Defendant entered into a binding contract when:

a.    The Plaintiff paid consideration for the Contract and when the Plaintiff

specifically paid tuition in exchange for his education.

b.    There was a valid offer and acceptance of this Contract between the parties.

c.    Both parties accompanied this consideration with a signed writing, which bound

the parties to the Contract.

      d.   The contract required that both parties adhere to the College's policies and procedures.

121.    The Defendant College breached the Contract when it substantially deviated from the terms of the Contract.

122.    The Defendant's policies set forth a process, which involves the College convening a hearing when it alleges that a student committed academic misconduct.  (Exhibit "B" at 2; 22-27). Nowhere in the policies does it say that the College can coerce and trick a student with Autism into forgoing the hearing process.

123.    Again, as a person with Autism, he is especially prone to be manipulated by people in positions of authority and he is vulnerable to coercion. It is for this reason that the College should abide by the terms of its contract and polices, and not substantially deviate from the same. To that end, the substantial deviation only further resulted in a lack of procedural fairness to Mr. Saavedra.

124.    The waiver for the hearing must be voluntarily and freely given. It cannot be given without actual assent and a full understanding that the person is voluntarily waiving the process.

125.    The College's refusal to follow its own policies is interfering with Mr. Saavedra's ability to resolve allegations and his dispute with the College.

126.    By breaching the Contract, and substantially deviating from the same, the College has directly and proximately caused Plaintiff's damages, which include, but are not limited to, financial loss, interests on student loans, consequential damages, and related costs.

127.    Wherefore, the Plaintiff prays for relief against the Defendant as hereinafter set forth in the prayer for relief.

## **DAMAGES**

128.   Plaintiff suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of all Defendants, in an amount that shall be proven at the time of trial. These damages include, but are not limited to: damages for general pain and suffering;  damages for mental anguish and treatment, both past and future; damages for the loss of enjoyment of life, both past and future; medical and medical-related expenses, both past and future; travel and travel-related expenses, both past and future; emotional distress, both past and future; pharmaceutical expenses, both past and future; loss of income and employment opportunities; lost tuition, and any and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Saavedra respectfully prays that the Court award him compensatory and restitutionary damages against Defendant Lehigh Carbon Community College for, including, but not limited to, psychological treatment, treatment for mental anguish and emotional distress, lost wages, loss of future earnings, loss of enjoyment of life, emotional pain and suffering, interference with his civil rights, and reasonable attorneys' fees and costs of suit. Furthermore, Mr. Saavedra seeks any and all equitable relief, together with any and all remedies, that the Court deems just and appropriate, including ordering the College to remove any and all contested academic integrity violations from his file, and to allow him to retroactively withdraw from the course.

Respectfully submitted,

**MONTGOMERY LAW, PLLC**
1420 Locust Street, Suite 420
Philadelphia, PA 19102
***Attorneys for Plaintiffs***

Dated: June 18, 2024                    By:_____

Bradley R. Flynn, Esq.
PA Bar ID: 332730